ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| PR CR INVESTMENT, CORP.<br><br>Apelado<br><br>v.<br><br>EL FARMER, INC., MIGUEL ANGEL RAMOS CRUZ<br><br>Apelante | **TA2026AP00360** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Aguadilla<br><br>Civil Núm. AG2024CV01596<br><br>Sobre: Cobro de Dinero; Ejecución de Hipoteca por la vía Ordinaria; y Ejecución de Gravamen Mobiliario |

Panel integrado por su presidente el Juez Candelaria Rosa, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de mayo de 2026.

Comparece El Farmer Inc. (El Farmer) Y Miguel A. Ramos Cruz (señor Ramos Cruz) (en conjunto, parte apelante) mediante una *Apelación*, para solicitarnos que revoquemos la *Sentencia Sumaria* emitida el 10 de marzo de 2026, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla.[2] Mediante el referido dictamen, el foro de instancia declaró Ha Lugar la *Moción bajo juramento solicitando se dicte sentencia sumaria*, presentada por PR CR Investment Corp. (PR CR; parte apelada) el 9 de abril de 2025.[3] En consecuencia, ordenó a la parte apelante a satisfacer las cantidades adeudadas a la parte apelada por concepto de los préstamos comerciales identificados

---

[1] Ver Orden Administrativa OATA-2026-044 del 4 de mayo de 2026.
[2] *Sentencia Sumaria*, entrada núm. 34 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] *Moción bajo juramento solicitando se dicte sentencia sumaria*, entrada núm. 19 en SUMAC.

con los números 5200000780; 5200000781 y 5200000782, respectivamente.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

I

El caso del título inició el 10 de septiembre de 2024 con la presentación de una *Demanda* instada por PR CR contra la parte apelante sobre cobro de dinero, ejecución de hipoteca y ejecución de gravamen mobiliario.[4] En su pliego, alegó que, el 24 de febrero de 2016, el Banco de Desarrollo Económico para Puerto Rico le concedió a la parte apelante tres (3) préstamos comerciales. En específico, adujo que el primer préstamo, identificado con el número 5200000780, fue por la cantidad de $1,392,000.00; el segundo préstamo, identificado con el número 5200000781, fue por la cantidad de $1,708,000.00; y el tercer préstamo, identificado con el número 5200000782, fue por la cantidad de $200,000.00. Indicó que los préstamos fueron suscritos por El Farmer y el señor Ramos Cruz como garantizador. Por otra parte, sostuvo que, el 28 de abril de 2017, Condado 5 LLC adquirió todo el interés del Banco de Desarrollo Económico para Puerto Rico, quedando subrogada en todos los derechos de este. Alegó que, posteriormente, el 25 de abril de 2024, PR CR adquirió todo el interés de Condado 5 LLC, por lo que quedó subrogada en todos los derechos de este. En consecuencia, sostuvo que se encuentra en posesión del original de los pagarés asegurados que evidencian los préstamos, así como del pagaré hipotecario que garantiza

---

[4] *Demanda*, entrada núm. 1 en SUMAC.

los préstamos. Adujo que, estando los pagarés endosados a la orden de PR CR, este ostenta el derecho a exigir su pago y cumplimiento. Alegó que la parte apelante ha incumplido con su obligación de hacer los correspondientes pagos mensuales. En consecuencia, indicó que la parte apelante adeuda las siguientes sumas:

**Préstamo Comercial #5200000780:**

$1,189,685 de principal más intereses a razón del 8.75% anual, según pactado, suma que al día 25 de abril de 2024 ascendía a $47,307.26 y los cuales continúan acumulándose diariamente a razón de $289.15 (*per diem*), hasta su total y completo pago; $17,739.33 de cargos por demora y $139,200.00 según pactado en el pagaré asegurado por concepto de costas, gastos y honorarios de abogado.

**Préstamo Comercial #5200000781:**

$1,604,585.84 de principal más intereses a razón del 8.75% anual, según pactado, suma que al día 25 de abril de 2024 ascendía a $187,150.62 y los cuales continúan acumulándose diariamente a razón de $390.00 (per diem), hasta su total y completo pago; $21,766.80 de cargos por demora; y $170,800.00 según pactado en el pagaré asegurado por concepto de costas, gastos y honorarios de abogado.

**Préstamo Comercial #5200000782:**

$68,072.75 de principal más intereses a razón del 8.75% anual, según pactado, suma que al día 25 de abril de 2024 ascendía a $14,943.76 y los cuales continúa acumulándose diariamente a razón de $18.44 (*per diem*), hasta su total y completo pago; $6,474.52 de cargos por demora; y $20,000.00 según pactado en el pagaré asegurado por concepto de costas, gastos y honorarios de abogado.

Esbozó que dichas cantidades no han sido satisfechas, del todo, ni en parte, a pesar de los requerimientos que a tales efectos le había hecho a la parte apelante. Alegó que los préstamos quedaron garantizados mediante un pagaré hipotecario por la cantidad de $3,300,000.00. Además, adujo que dicha

hipoteca afecta catorce (14) fincas registrales sobre las cuales se distribuyó la carga hipotecaria. Por otra parte, sostuvo que, en adición a las garantías hipotecarias, la parte apelante constituyó un interés asegurado, un gravamen mobiliario y/o cesiones, los cuales fueron debidamente cedidos a su favor. Adujo que dichos gravámenes mobiliarios están debidamente perfeccionados mediante el registro de una declaración de financiamiento (UCC-1A-PR) en el Departamento de Estado de Puerto Rico. En mérito de lo anterior, PR CR solicitó que se declarara Ha Lugar la *Demanda* y, en su consecuencia, se le ordenara a la parte apelante a pagar las cantidades adeudadas. Además, solicitó que, de no efectuarse el pago de las sumas adeudadas, se vendieran los muebles e inmuebles gravados e hipotecados en pública subasta para con su producto satisfacer las cantidades adeudadas. Por último, solicitó que, en caso de que el producto de dicha venta no fuera suficiente para satisfacer la suma adeudada, se ordenara la venta en pública subasta de los otros bienes de la parte apelante.

Conviene mencionar que, al día siguiente de la presentación de la *Demanda*, PR CR presentó *Moción al Expediente Judicial* mediante la cual incluyó la prueba documental necesaria para sustentar las alegaciones de la *Demanda*.[5] En específico, la parte apelada incluyó: (i) contrato de préstamo; (ii) pagarés operacionales; (iii) carta de garantía; (iv) pagaré hipotecario; (v) los acuerdos de gravamen mobiliario; (vi) contrato de cesión y (vii) declaración de financiamiento.

---

[5] *Moción al Expediente Judicial,* entrada núm. 2 en SUMAC.

En respuesta, el 2 de diciembre de 2026, la parte apelante presentó *Contestación a Demanda*.[6] En cuanto a la contestación, admitió algunas alegaciones, negó otras. Se desprende además que, como parte de la contestación, la parte apelante presentó sus defensas afirmativas. En lo pertinente, alegó que la *Demanda* no exponía hechos que justificaran la concesión de un remedio. Sostuvo que correspondía que la parte apelada acreditara ser el tenedor de buena fe de los pagarés, así como la existencia de los UCC que alega tener inscritos en el Departamento de Estado y la transferencia de estos a su favor. En consecuencia, solicitó que se declarara No Ha Lugar a la *Demanda* incoada por PR CR.

Posteriormente, el 9 de abril de 2025, PR CR presentó *Moción bajo juramento solicitando se dicte sentencia sumaria*.[7] En su escrito, reiteró el incumplimiento de pago de la parte apelante de los préstamos comerciales número 5200000780, 5200000781 y 5200000782. Además, indicó que la parte apelante no contravino la existencia ni las cuantías de las cantidades reclamadas en la *Demanda*. En apoyo a lo anterior, presentó al foro de instancia una lista de treinta y un (31) hechos que estimó incontrovertidos. A tenor, solicitó que se condenara a la parte apelante al pago de los préstamos. Asimismo, solicitó que, de no efectuarse el pago de las sumas adeudadas, se vendieran los muebles e inmuebles gravados e hipotecados en pública subasta para con su producto satisfacer las cantidades adeudadas. Por último, solicitó que, en caso

---

[6] *Contestación a Demanda*, entrada núm. 12 en SUMAC.
[7] *Moción bajo juramento solicitando se dicte sentencia sumaria*, entrada núm. 19 en SUMAC.

de que el producto de dicha venta no fuera suficiente para satisfacer la suma adeudada, se ordenara la venta en pública subasta de los otros bienes de la parte apelante.

Luego de varios trámites procesales innecesarios pormenorizar, el 10 de enero de 2026, la parte apelante presentó *Oposición a Moción de Sentencia Sumaria*.[8] En el pliego, aceptó como no controvertidos la mayoría de los hechos y negó otros. Por otra parte, reiteró que la parte apelada no demostró ser la tenedora de buena fe de los pagarés y documentos objeto de la reclamación. Además, sostuvo que el caso no debía ser resuelto por medio de sentencia sumaria, toda vez que existían asuntos que requerían que el foro de instancia evaluara la prueba y evidencia testimonial en un juicio. Sobre el particular, arguyó que estuvo bajo un proceso en el Tribunal de Quiebras en el año 2022, el cual finalizó el 25 de octubre de 2023. Explicó que, durante dicho proceso, contaba con un acuerdo con Condado 5 LLC, predecesor de PR CR, en el cual realizó unos pagos por la cantidad de $22,000 mensuales. A su vez, añadió que, luego del 25 de octubre de 2023, continuó haciendo unos pagos a Condado 5 LLC por la cantidad de $4,000.00 al mes. Sostuvo que la moción de sentencia sumaria presentada por PR CR no detalla los pagos recibidos previamente ni tampoco indica cómo y bajo qué concepto se aplicaron dichos pagos. Por todo lo anteriormente expuesto, solicitó que se denegara la *Moción bajo juramento solicitando se dicte sentencia sumaria*, presentada por PR CR y se ordenara la continuación de

---

[8] *Oposición a Moción de Sentencia Sumaria*, entrada núm. 31 en SUMAC.

los procedimientos, incluyendo la celebración de un juicio en su fondo.

Evaluadas las mociones, el 10 de marzo de 2026, notificada al día siguiente, el foro primario emitió *Sentencia Sumaria*.[9] Mediante esta, declaró Ha Lugar la *Moción bajo juramento solicitando se dicte sentencia sumaria*, presentada por PR CR. En lo pertinente, desglosó las siguientes determinaciones de hechos:

1. EL FARMER, INC., es una corporación organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico, cuya dirección física y postal conocida es: 3623 AVE MILITAR PMB 353 Isabela, Puerto Rico 00662; PO Box 80000, PMB 353, Isabela, PR 00662-0066. Tel. 787-546-0963.

2. MIGUEL ANGEL RAMOS CRUZ, es mayor de edad, propietario y vecino de Isabela, Puerto Rico, cuya dirección física y postal conocida es: 3623 AVE MILITAR PMB 353 Isabela, Puerto Rico 00662; Carretera #2, Barrio Galateo Bajos, Isabela Puerto Rico, 00662 y PO Box 80000, PMB 353, Isabela, PR 00662-0066; Tel. desconocido. EL FARMER, INC., MIGUEL ANGEL RAMOS CRUZ, en adelante es denominado la parte demandada o Deudor.

3. El deudor, El Farmer, Inc., suscribió cierto préstamo comercial el 24 de febrero de 2016 por la suma de $1,392,000.00 a favor de Banco de Desarrollo Económico Para Puerto Rico (en adelante denominado el "BDE"). El Préstamo fue evidenciado por un Pagaré Asegurado otorgado en esa misma fecha autenticado mediante afidávit número 2,069, ante el Notario Aníbal Mendín Sánchez; concedido bajo Contrato de Préstamo otorgado en esa misma fecha y autenticado mediante afidávit número 2,068, ante el mismo notario. El Pagaré Asegurado fue suscrito, en calidad de firmante, por la Deudora y el Garantizador.

4. El deudor, El Farmer, Inc., suscribió un segundo préstamo comercial el 24 de febrero de 2016 por la suma de $1,708,000.00 a favor de Banco de Desarrollo Económico Para Puerto Rico (en adelante denominado el "BDE"). El Préstamo fue evidenciado por un Pagaré Asegurado otorgado en esa misma fecha autenticado mediante afidávit número 2,070, ante el Notario Aníbal Mendín Sánchez; concedido bajo Contrato de Préstamo otorgado en esa misma fecha y autenticado mediante afidávit número

---

[9] *Sentencia Sumaria*, entrada núm. 34 en SUMAC.

2,068, ante el mismo notario. El Pagaré Asegurado fue suscrito, en calidad de firmante, por la Deudora y el Garantizador.

5. El deudor, El Farmer, Inc., suscribió un tercer préstamo comercial el 24 de febrero de 2016 por la suma de $200,000.00 a favor de Banco de Desarrollo Económico Para Puerto Rico (en adelante denominado el "BDE"). El Préstamo fue evidenciado por un Pagaré Asegurado otorgado en esa misma fecha autenticado mediante afidávit número 2,071, ante el Notario Aníbal Mendín Sánchez; concedido bajo Contrato de Préstamo otorgado en esa misma fecha y autenticado mediante afidávit número 2,068, ante el mismo notario. El Pagaré Asegurado fue suscrito, en calidad de firmante, por la Deudora y el Garantizador. Los préstamos comerciales número 5200000780; 5200000781 y 5200000782, se denominarán en conjunto en adelante como los "Préstamos".

6. El 28 de abril de 2017, PR CR adquirió todo el interés de Banco de Desarrollo Para Puerto Rico, (en adelante "BDE") en los Préstamos, quedando subrogada en todos los derechos de BDE ante la parte aquí demandada, convirtiéndose a su vez en acreedor de los Préstamos.

7. El 25 de abril de 2024, PR CR adquirió todo el interés de PR CR INVESTMENT, CORP., en los Préstamos, quedando subrogada en todos los derechos del PR CR INVESTMENT, CORP., ante la Deudora y el Garantizador, convirtiéndose a su vez en acreedor de los Préstamos.

8. Para garantizar las cantidades adeudadas detalladas en la Demanda y/o esta Moción, el Deudor entregó a PR CR el(los) siguiente(s) pagaré(s) hipotecario(s), siendo PR CR el actual y legal tenedor por endoso del mismo:

     a. PAGARÉ HIPOTECARIO a la orden del BANCO DE DESARROLLO ECONOMICO PARA PUERTO RICO, por la suma principal de $3,300,000.00 con vencimiento a la presentación, el cual está garantizado con hipoteca constituida por la escritura número 6 del 24 de febrero de 2016, ante el notario Aníbal J. Mendín Sánchez y autenticado mediante afidávit número 2,072 del mismo notario y en igual fecha, (en adelante denominada la "Escritura de Hipoteca 1" o la "Hipoteca 1").

9. La descripción registral de la finca número 5,348, en adelante la "Finca I" afectada por el pagaré hipotecario descrito en el inciso (8a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

I) ---RUSTICA: Radicada en el BARRIO ARENALES BAJOS de Isabela, Puerto Rico, compuesto de CINCO PUNTO SESENTA Y SEIS (5.66) CUERDAS, o sea, dos (2) hectáreas, veintidós (22) áreas y cuarenta y seis (46) centiáreas. En lindes por el Norte, con Rosa Chaves Cordero; por el Sur, Luis Chaves Cordero; por el Este; camino privado de la finca; y por el Oeste, Eufemio López y Luis Chaves Cordero.------------------------------------------------------------------------Finca número cinco mil trescientos cuarenta y ocho (5,348), inscrita al folio ciento cuarenta y uno (141) del tomo ciento (107) de Isabela, Registro de la Propiedad, Sección de Aguadilla.--------En relación con la hipoteca de $3,300,000.00 responde esta finca por la suma de $110,000.00.---

10. La descripción registral de la finca número 5,349, en adelante la "Finca II" afectada por el pagaré hipotecario descrito en el inciso (8 a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

II. ---RUSTICA: Radicada en el BARRIO ARENALES BAJOS de Isabela, Puerto Rico, compuesto de CINCO PUNTO SESENTA Y SEIS (5.66) CUERDAS, o sea, dos (2) hectáreas, veintidós (22) áreas y cuarenta y seis (46) centiáreas. En lindes por el Norte, con Ulderico Chaves Cordero y camino privado de la finca; por el Sur, Alberto Esteves; por el Este; Serafín Chaves Cordero; y por el Oeste, Manuel González.-------------------------------------------------Finca número cinco mil trescientos cuarenta y nueve (5,349), inscrita al folio ciento cuarenta y cinco (145) del tomo ciento (107) de Isabela, Registro de la Propiedad, Sección de Aguadilla.----------- -------------------------------------------------En relación con la hipoteca de $3,300,000.00 responde esta finca por la suma de $110,000.00.---

11. La descripción registral de la finca número 5,350, en adelante la "Finca III" afectada por el pagaré hipotecario descrito en el inciso (8 a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

III. ---RUSTICA: Radicada en el BARRIO ARENALES BAJOS de Isabela, Puerto Rico, compuesto de SIETE PUNTO OCHENTA Y UNA (7.81) CUERDAS, o sea, tres (3) hectáreas, seis (6) áreas y nueve (9) centiáreas. En lindes por el Norte, con Sucesión Zoilo Chaves, hoy Matilde Chaves Cordero; por el Sur, Serafín Chaves Cordero y Ladislao Vélez; por el Este;

Sucesión Gonzalo Chaves y Ladislao Vélez; y por el Oeste, camino privado de la finca y Luis Ramón Chaves.-------------- -------------------------------------- Finca número cinco mil trescientos cincuenta (5,350), inscrita al folio ciento cincuenta (150) del tomo ciento (107) de Isabela, Registro de la Propiedad, Sección de Aguadilla.-------- -------------------------------------- -------------En relación con la hipoteca de $3,300,000.00 responde esta finca por la suma de $175,000.00.----------------- --------------------

12. La descripción registral de la finca número 8,059, en adelante la "Finca IV" afectada por el pagaré hipotecario descrito en el inciso (8 a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

IV. ---RUSTICA: Radicada en el BARRIO ARENALES BAJOS de Isabela, Puerto Rico, compuesto de CINCO (5.00) CUERDAS, o sea, una (1) hectárea, noventa y seis (96) áreas y cincuenta y dos (52) centiáreas. En lindes por el Norte, con Emérito Jiménez; por el Sur, Rafael Machado; por el Este; Eduardo Esteves, hoy con Miguel Ramos Franqui; y por el Oeste, con Carretera Estatal cuatrocientos setenta y cinco (475).-------------------------- -------------------------------------- -------------------------------Finca número ocho mil cincuenta y nueve (8,059), inscrita al folio ciento setenta y siete (177) del tomo ciento noventa y seis (196) de Isabela, Registro de la Propiedad, Sección de Aguadilla -------- --------- --------------------------En relación con la hipoteca de $3,300,000.00 responde esta finca por la suma de $100,000.00.---

13. La descripción registral de la finca número 12,650, en adelante la "Finca V" afectada por el pagaré hipotecario descrito en el inciso (8 a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

V. ---RUSTICA: Radicada en el BARRIO ARENALES BAJOS del término municipal de Isabela, Puerto Rico, compuesto de SEIS PUNTO OCHO SEIS CERO OCHO (6.8608) CUERDAS, o sea, dos (2) hectáreas, sesenta y nueve (69) áreas, sesenta y cinco (65) centiáreas y sesenta y nueve (69) miliáreas. En lindes por el Norte, con remanente de la finca principal y Sucesión de Oscar Hau; por el Sur, Rosalina Chaves Cordero; por el Este; camino privado de la finca; y por el Oeste, con Rafaela Chaves y Santos

Román.---------------------------------
----------------------Finca número doce mil seiscientos cincuenta (12,650), inscrita al folio veintinueve (29) del tomo doscientos cuarenta y ocho (248) de Isabela, Registro de la Propiedad, Sección de Aguadilla.---------------- -
---------------------------------------
-En relación con la hipoteca de $3,300,000.00 responde esta finca por la suma de $150,000.00.---

14. La descripción registral de la finca número 12,658, en adelante la "Finca VI" afectada por el pagaré hipotecario descrito en el inciso (8 a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

VI. ---RUSTICA: Radicada en el BARRIO ARENALES BAJOS del término municipal de Isabela, Puerto Rico, compuesto de TRES Y VEINTE Y UN CENTIMO DE OTRA (3.21) CUERDAS, o sea, una (1) hectárea, veinticinco (25) áreas, setenta y siete (77) centiáreas. En lindes por el Norte, con camino privado; por el Sur, Rafael Machado; por el Este; Marcos Machado Beníquez; y por el Oeste, con Juan Machado Machado.----------------------
-----------------Finca número doce mil seiscientos cincuenta y ocho (12,658), inscrita al folio ochenta y dos (82) del tomo doscientos cuarenta y ocho (248) de Isabela, Registro de la Propiedad, Sección de Aguadilla.-------------------
--------------------- -------En relación con la hipoteca de $3,300,000.00 responde esta finca por la suma de $70,000.00.---
-

15. La descripción registral de la finca número 12,884, en adelante la "Finca VII" afectada por el pagaré hipotecario descrito en el inciso (8 a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

VII. ---RUSTICA: Solar radicado en el BARRIO ARENALES BAJOS del municipio de Isabela, Puerto Rico, compuesto de MIL SEISCIENTOS VEINTICINCO PUNTO SETECIENTOS SESENTA Y NUEVE (1,625.769) METROS CUADRADOS, o sea, una (1) hectárea, veinticinco (25) áreas, setenta y siete (77) centiáreas. En lindes por el Norte, veintiocho punto siete siete ocho (28.778) metros, con solar dedicado a uso público; por el Sur, en veintiséis punto seis uno seis (26.616) metros, con canal de riego; por el Este, en cincuenta y siete punto siete siete uno (57.771) metros, con Sucesión de Oscar Hau; y por el Oeste, en cuarenta (40.00) metros y dieciocho punto dos

nueve o (18.292) metros, con la Sra. Ana María Chaves.----------------------------------------------------------------------------------------------Finca número doce mil ochocientos ochenta y cuatro (12,884), inscrita al folio noventa y dos (92) del tomo doscientos cincuenta y dos (252) de Isabela, Registro de la Propiedad, Sección de Aguadilla.--------------------------------------------------En relación con la hipoteca de $3,300,000.00 responde esta finca por la suma de $140,000.00.----------------------------------------

16. La descripción registral de la finca número 13,952, en adelante la "Finca VIII" afectada por el pagaré hipotecario descrito en el inciso (8 a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

VIII. ---RUSTICA: Radicada en el BARRIO ARENALES BAJOS de Isabela, Puerto Rico, compuesto de UNO PUNTO SEIS SEIS (1.66) CUERDAS, o sea, sesenta y cinco (65) áreas y veinticuatro (24) centiáreas. En lindes par el Norte, Matilde Chaves Cordero; por el Sur, Serafín Chaves Cordero; por el Este, Sucesión Gonzalo Chaves y por el Oeste, camino privado de la finca.--------------------------------------------------Finca número trece mil novecientos cincuenta y dos (13,952), inscrita al folio veintinueve (29) del tomo doscientos setenta y uno (271) de Isabela, Registro de la Propiedad, Sección de Aguadilla.----------En relación con la hipoteca de $3,300,000.00 responde esta finca por la suma de $35,000.00.----

17. La descripción registral de la finca número 13,953, en adelante la "Finca IX" afectada por el pagaré hipotecario descrito en el inciso (8 a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

IX. ---RUSTICA: Radicada en el BARRIO ARENALES BAJOS de Isabela, Puerto Rico, compuesto de TRES PUNTO DIECISIETE (3.17) CUERDAS, o sea, una hectárea, veintitrés (23) áreas y cincuenta y nueve (59) centiáreas. En lindes por el Norte, Ladislao Vélez y Serafín Chaves Cordero; por el Sur, Alberto Esteves; por el Este, José Román y Ladislao Vélez y por el Oeste, Luis Ramón Chaves Cordero.-------- ------Finca número trece mil novecientos cincuenta y tres (13,953), inscrita al folio treinta y cinco (35) del tomo doscientos setenta y uno (271) de Isabela, Registro de la Propiedad, Sección de Aguadilla--------------------------------------------------En relación

con la hipoteca de $3,300,000.00 responde esta finca por la suma de $50,000.00.----

18. La descripción registral de la finca número 14,228, en adelante la "Finca X" afectada por el pagaré hipotecario descrito en el inciso (8 a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

X.---RUSTICA: Radicada en los BARRIOS ARENALES BAJOS Y GALATEO BAJO del término municipal de Isabela, Puerto Rico, compuesto de SESENTA Y TRES PUNTO NUEVE DOS NUEVE OCHO (63.9298) CUERDAS. En lindes por el Norte, Sucesión Chaves; por el Sur, con Eduardo Esteves y Carretera cuatrocientos setenta y cinco (475); por el Este, Juanita Román, Sucesión Vega, Sucesión Román, Eduardo Esteves, Sucesión Corchado y Eduardo Esteves; y por el Oeste, Pedro Machado Mariano Echevarría, Eduardo Esteves, Manuel Abrams, Sucesión Machado, Eduardo Esteves, Carretera (475), Manuel González y Juanita Román.--------------- ----------------------------------Finca número catorce mil doscientos veintiocho (14,228), inscrita al folio doscientos sesenta y dos (262) del tomo doscientos setenta y cinco (275) de Isabela, Registro de la Propiedad, Sección de Aguadilla---------------------------- -------En relación con la hipoteca de $3,300,000.00 responde esta finca por la suma de $1,500,000.00.-

19. La descripción registral de la finca número 12,649, en adelante la "Finca XI" afectada por el pagaré hipotecario descrito en el inciso (8 a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

XI.---RUSTICA: Radicada en el BARRIO ARENALES BAJOS del término municipal de Isabela, Puerto Rico, compuesto de SEIS PUNTO NOVENTA Y DOS CUARENTA Y OCHO (6.9248) CUERDAS, igual a dos (2) hectáreas, setenta y dos (72) áreas, diecisiete (17) centiáreas y veintitrés (23) miliáreas. En lindes por el Norte, con remanente de la finca principal y en una pequeña porción con la Carretera Estatal número Dos (2); por el Sur, con Matilde Chaves; por el Este, con Sucesión de Gonzalo Chaves; y por el Oeste, con camino privado de la finca. ------------ -----Finca número doce mil seiscientos cuarenta y nueve (12,649) inscrita al folio veinticuatro (24) del tomo doscientos cuarenta y ocho (248) de Isabela, Registro de la Propiedad, Sección de Aguadilla.------------------

------------------------En relación con la hipoteca de $3,300,000.00 responde esta finca por la suma de $160,000.00.---

20. La descripción registral de la finca número 5,346, en adelante la "Finca XII" afectada por el pagaré hipotecario descrito en el inciso (8 a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

XII.----RUSTICA: Radicada en el BARRIO ARENALES BAJOS del término municipal de Isabela, Puerto Rico, compuesto de CINCO PUNTO SESENTA Y SEIS (5.66) CUERDAS, o sea, dos (2) hectáreas, veintidós (22) áreas y cuarenta y seis (46) centiáreas. En lindes por el Norte, con Carmen Chaves Cordero; por el Sur, con Rosa Chaves Cordero; por el Este, con camino privado de la finca; y por el Oeste, con Santos Román y Manuel Pérez.------------------- -----------Finca número cinco mil trescientos cuarenta y seis (5,346) inscrita al folio ciento treinta y tres (133) del tomo ciento siete (107) de Isabela, Registro de la Propiedad, Sección de Aguadilla.-----------En relación con la hipoteca de $3,300,000.00 responde esta finca por la suma de $110,000.00.-------------------------- ----------

21. La descripción registral de la finca número 5,347, en adelante la "Finca XIII" afectada por el pagaré hipotecario descrito en el inciso (8 a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

XIII. ---RUSTICA: Radicada en el BARRIO ARENALES BAJOS del término municipal de Isabela, Puerto Rico, compuesto de CINCO PUNTO SESENTA Y SEIS (5.66) CUERDAS, o sea, dos (2) hectáreas, veintidós (22) áreas y cuarenta y seis (46) centiáreas. En lindes por el Norte, con Rosalina Chaves Cordero; por el Sur, con Ulderico Chaves Cordero; por el Este, con camino privado de la finca; y por el Oeste, con José Rodríguez y Manuel Pérez.---------- --------Finca número cinco mil trescientos cuarenta y siete (5,347) inscrita al folio ciento treinta y siete (137) del tomo ciento siete (107) de Isabela, Registro de la Propiedad, Sección de Aguadilla.------------------- -------------------------------En relación con la hipoteca de $3,300,000.00 responde esta finca por la suma de $450,000.00.-- -----------------------------------

22. La descripción registral de la finca número 13,793, en adelante la "Finca XIV"

afectada por el pagaré hipotecario descrito en el inciso (8 a) y que garantiza el pago y cumplimiento de los Préstamos es la siguiente:

XIV. ---RUSTICA: Radicada en el BARRIO ARENALES BAJOS del término municipal de Isabela, Puerto Rico, compuesto de CINCO PUNTO SESENTA Y SEIS (5.66) CUERDAS, o sea, dos (2) hectáreas, veintidós (22) áreas y cuarenta y seis (46) centiáreas. En lindes por el Norte, con Rosalina Chaves Cordero; por el Sur, con Ulderico Chaves Cordero; por el Este, con camino privado de la finca; y por el Oeste, con José Rodríguez y Manuel Pérez.-------------------Finca número cinco mil trescientos cuarenta y siete (5,347) inscrita al folio ciento treinta y siete (137) del tomo ciento siete (107) de Isabela, Registro de la Propiedad, Sección de Aguadilla.-------------------------------------------------En relación con la hipoteca de $3,300,000.00 responde esta finca por la suma de $140,000.00.-----------------------------------

23. El perfeccionamiento de la posesión legítima y creencia de buena del BDE, hoy PR CR del(los) pagaré(s) hipotecario(s) descrito(s) anteriormente mediante un interés asegurado o prendario, quedaron todos consignados en el Acuerdo de Gravamen Mobiliario y de Prenda relacionados a continuación, suscrito por el deudor, y debidamente cedidos a favor de PR CR: a. Acuerdo de Gravamen Mobiliario y de Prenda suscrito por por la Deudora, el 24 de febrero de 2016 y autenticada mediante afidávit número 2,076 ante el notario Aníbal J. Mendín Sánchez.

24. PR CR es el tenedor de los mencionados Pagaré Asegurado y el Pagaré Hipotecario, descritos anteriormente. Los mismos no han sido posteriormente endosados para su cancelación, ni cedidos, ni negociados.

25. La Hipoteca 1 garantiza el pago del principal de los Préstamos y sus intereses, así como una suma líquida y exigible de $330,000.00 para gastos, costas y honorarios de abogado en caso de reclamación judicial. La Escritura de Hipoteca 1, finca número 5,348, quedó debidamente inscrita al tomo Karibe de Isabela, Sección de Aguadilla del Registro de la Propiedad, inscripción 21, respondiendo esta finca por la suma de $110,000.00; finca número 5,349 quedó debidamente inscrita al tomo Karibe de Isabela, Sección de Aguadilla del Registro de la Propiedad, inscripción 20, respondiendo esta finca por la suma de $110,000.00,, finca 5,350; quedó debidamente inscrita al tomo Karibe de Isabela, Sección de

Aguadilla del Registro de la Propiedad, inscripción 20, respondiendo esta finca por la suma de $175,000.00; finca 8,059 quedó debidamente inscrita al tomo Karibe de Isabela, Sección de Aguadilla del Registro de la Propiedad, inscripción 8, respondiendo esta finca por la suma de $100,000.00; finca 12,650; quedó debidamente inscrita al tomo Karibe de Isabela, Sección de Aguadilla del Registro de la Propiedad, inscripción 18, respondiendo esta finca por la suma de $150,000.00; finca 12,658; quedó debidamente inscrita al tomo Karibe de Isabela, Sección de Aguadilla del Registro de la Propiedad, inscripción 15, respondiendo esta finca por la suma de $70,000.00; finca 12,884; quedó debidamente inscrita al tomo Karibe de Isabela, Sección de Aguadilla del Registro de la Propiedad, inscripción 7, respondiendo esta finca por la suma de $140,000.00; finca 13,952; quedó debidamente inscrita al tomo Karibe de Isabela, Sección de Aguadilla del Registro de la Propiedad, inscripción 16, respondiendo esta finca por la suma de $35,000.00; finca 13,953; quedó debidamente inscrita al tomo Karibe de Isabela, Sección de Aguadilla del Registro de la Propiedad, inscripción 16, respondiendo esta finca por la suma de $50,000.00; finca 14,228; quedó debidamente inscrita al tomo Karibe de Isabela, Sección de Aguadilla del Registro de la Propiedad, inscripción 20, respondiendo esta finca por la suma de $1,500,000.00; finca 12,649; quedó debidamente inscrita al tomo Karibe de Isabela, Sección de Aguadilla del Registro de la Propiedad, inscripción 19, respondiendo esta finca por la suma de $160,000.00; finca 5,346; quedó debidamente inscrita al tomo Karibe de Isabela, Sección de Aguadilla del Registro de la Propiedad, inscripción 19, respondiendo esta finca por la suma de $110,000.00; finca 5,347; quedó debidamente inscrita al tomo Karibe de Isabela, Sección de Aguadilla del Registro de la Propiedad, inscripción 22, respondiendo esta finca por la suma de $450,000.00; finca 13,793, quedó debidamente inscrita al tomo Karibe de Isabela, Sección de Aguadilla del Registro de la Propiedad, inscripción 15, respondiendo esta finca por la suma de $140,000.00.

26. Además de las garantías hipotecarias antes descritas y para garantizar el pago de los Préstamos, la Deudora constituyó un interés asegurado, un gravamen mobiliario y/o cesiones para garantizar el pago de la Deuda:

a. Acuerdo de Gravamen Mobiliario suscrito el 24 de febrero de 2016 y autenticado bajo el afidávit número 2,074 ante el Notario Aníbal Mendín Sánchez sobre la cuota de 213,146 CUARTILLOS DE

PRODUCCION DE LECHE CADA 14 DIAS ASIGNADA POR LA OFICINA DE REGLAMENTACION DE LA INDUSTRIA LECHERA.

b. Acuerdo de Gravamen Mobiliario suscrito el 24 de febrero de 2016 y autenticado bajo el afidávit número 2,075 ante el Notario Aníbal Mendín Sánchez sobre todos los bienes, muebles, equipos, 825 cabezas de ganado lechero con valor estimado de $660,000.00.

c. Contrato de Cesión de Derechos y Créditos y de Constitución de Gravamen Mobiliario, suscrito el 24 de febrero de 2016 y autenticado bajo el afidávit número 2,078 ante el Notario Aníbal Mendín Sánchez sobre cuentas por cobrar. Enmienda a Contrato de Cesión de Derechos y Créditos y de Constitución de Gravamen Mobiliario, suscrito el 11 de abril de 2016 y autenticado bajo el afidávit número 2,139 ante el Notario Aníbal Mendín Sánchez.

d. Contrato de Cesión de Derechos y Créditos y de Constitución de Gravamen Mobiliario (Pagos de la Planta Elaboradora Suiza Dairy Corp.) suscrito el 24 de febrero de 2016 y autenticado bajo el afidávit número 2,077 ante el Notario Aníbal Mendín Sánchez sobre cuentas por cobrar.

27. Con el propósito de perfeccionar adecuadamente los gravámenes mobiliarios y su interés asegurado a favor de PR CR sobre las cesiones, gravámenes mobiliarios y el producto de éstos, la Deudora y el Banco de Desarrollo Económico para Puerto Rico suscribieron y radicaron en el Departamento de Estado del Estado Libre Asociado de Puerto Rico, las siguientes Declaración de Financiamiento ("UCC-1A-PR"):

a. Declaración de Financiamiento suscrita por y Banco de Desarrollo Económico de Puerto Rico, registrada bajo el número 2016001648 y debidamente cedida a favor de PR CR.

28. El Deudor incumplió con su obligación de pago de los plazos mensuales con los Préstamos, habiendo PR CR declarado vencida la totalidad de dicha deuda.

29. La Demandada adeuda a PR CR las siguientes cantidades que están vencidas, son líquidas y exigibles:

**Préstamo Comercial #5200000780:**

$1,189,685.67 de principal más intereses a razón del 8.75% ANUAL, según pactado, suma que al día 1 de abril de 2025 ascendía a $145,907.21 y los cuales continúan acumulándose diariamente a razón de $289.15 (per diem), hasta su total y completo pago; $17,739.33 de cargos por demora y $139,200.00 según pactado en el Pagaré Asegurado por concepto de costas, gastos y honorarios de abogado.

**Préstamo Comercial #5200000781:**
$1,604,585.84 de principal más intereses a razón del 8.75% ANUAL, según pactado, suma que al día 1 de abril de 2025 ascendía a $320,140.62 y los cuales continúan acumulándose diariamente a razón de $390.00 (per diem), hasta su total y completo pago; $21,766.80 de cargos por demora; y $170,800.00 según pactado en el Pagaré Asegurado por concepto de costas, gastos y honorarios de abogado.

**Préstamo       Comercial       #5200000782:**
$68,072.75 de principal más intereses a razón del 8.75% ANUAL, según pactado, suma que al día 1 de abril de 2025 ascendía a $21,231.80 y los cuales continúan acumulándose diariamente a razón de $18.44 (per diem), hasta su total y completo pago; $6,474.52 de cargos por demora; y $20,000.00 según pactado en el Pagaré Asegurado por concepto de costas, gastos y honorarios de abogado.

30. Los Deudores no son miembros activos de las fuerzas armadas de los Estados Unidos de América.

En vista de lo anterior, el foro primario ordenó a la parte apelante a satisfacer las cantidades adeudadas por concepto de los préstamos comerciales número 5200000780; 5200000781 y 5200000782, respectivamente. Dispuso que, en caso de que la parte apelante no hiciera efectivo dichas sumas dentro del término establecido por Ley, se ordenaría la venta de los bienes muebles e inmuebles gravados y/o hipotecados en pública subasta para con su producto satisfacer las cantidades adeudadas por esta. Asimismo, determinó que, de ser el producto de la venta insuficiente para satisfacer las sumas

adeudadas a PR CR, se ordenaría la venta en pública subasta de los otros bienes de la parte apelante, hasta que cualquier parte insoluta de la sentencia quede totalmente satisfecha.

Inconforme, el 9 de abril de 2026, la parte apelante presentó un recurso de *Apelación* en el cual esgrimió la comisión de los siguientes dos (2) errores:

PRIMER ERROR: Erró el Tribunal de Primera Instancia de Aguadilla al conceder la Moción de Sentencia Sumaria en el caso AG2024CV01596, a favor del Demandante-Apelado, PR CR Investment Corp., el 11 de marzo de 2026 en SUMAC 34.

SEGUNDO ERROR: Erró el Tribunal de Primera Instancia de Aguadilla al conceder la Moción de Sentencia Sumaria en el caso AG2024CV01596, a favor del Demandante-Apelado, PR CR Investment, aun cuando la parte Demandada, El Farmer Inc., planteó la existencia de una controversia real y material de hechos sobre las cuantías adeudadas y la aplicación de pagos realizados a predecesores del PR CR Investment Corp.

Mediante *Resolución* emitida el 10 de abril de 2026, concedimos a la parte apelada el término dispuesto en el Reglamento de este Tribunal, según enmendado, 2025 TSPR 42, para presentar su alegato. El 7 de mayo de 2026, compareció la parte apelada mediante un *Alegato de la parte Demandante-Apelado*. Habiendo quedado perfeccionado el recurso ante nos, procederemos a disponer del mismo.

## II

### A

El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que, únicamente, se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994). El propósito de este mecanismo

procesal es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo. *García Rivera et al. v. Enríquez*, 153 DPR 323, 337 (2001); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994). A esos efectos, "solamente debe ser dictada una sentencia sumaria en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes". *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a las págs. 911-912, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986) (Cita depurada); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990). Es decir, para que proceda dictar sentencia por la vía sumaria, es imprescindible que de los documentos que acompañan la solicitud o que obran en el expediente del tribunal no surja controversia legítima sobre hechos materiales del caso, y que, por ende, sólo reste aplicar el derecho. *Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007). Ahora bien, a los fines de considerar la moción, se tendrán como ciertos todos los hechos no controvertidos que consten en los documentos y declaraciones juradas ofrecidas por la parte promovente. *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 DPR 945, 957 (1993). No obstante, tales documentos deben evaluarse de la forma más favorable para la parte que se opone a la moción. *Íd.*, a la pág. 957.

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 regula todo lo concerniente a las solicitudes de sentencia sumaria. En específico, la Regla 36.3 (a) de Procedimiento Civil, *supra*, requiere que la parte que

promueve la solicitud de sentencia sumaria cumpla con los requisitos de forma siguientes:

(1) una exposición breve de las alegaciones de las partes;

(2) los asuntos litigiosos o en controversia;

(3) la causa de acción sobre la cual se solicita la sentencia sumaria;

(4) una relación concisa, organizada y con párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, indicando los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales se debe dictar sentencia argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido.

Cumplidos los requisitos establecidos para la solicitud de sentencia sumaria, el inciso (e) de la Regla 36.3 de Procedimiento Civil, *supra*, establece que:

La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.

No obstante, lo anterior, el solo hecho de no presentar evidencia que controvierta lo presentado por la parte promovente no implica necesariamente que proceda la sentencia sumaria. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a la pág. 913; *García Rivera et al. v. Enríquez*, supra, a la pág. 338; *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 DPR 538, 549 (1991);

*Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 281 (1990). Sobre este particular, el Tribunal Supremo ha resuelto que las partes no puede descansar en aseveraciones generales, es decir, meras afirmaciones no bastan. *Flores v. Municipio de Caguas*, 114 DPR 521, 525 (1983); *Ramos Pérez v. Univisión*, 178 DPR 200, 215-216 (2010). A esos efectos, y a tenor con la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.5, las partes estarán obligadas a demostrar que tienen evidencia para sustanciar sus alegaciones. *Flores v. Municipio de Caguas*, supra, a la pág. 525; *Ramos Pérez v. Univisión*, supra, a las págs. 215-216.

Por otra parte, es menester subrayar que nuestro Tribunal Supremo ha indicado que el mecanismo de sentencia sumaria no es el apropiado para resolver casos en los cuales hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial. *Elías y otros v. Chenet y otros,* 147 DPR 507, 521 (1999); *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994); *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 663 (2017). De la misma manera, también ha razonado que "hay litigios y controversias que por la naturaleza de estos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de "affidavits' o deposiciones". *Elías y otros v. Chenet y otros,* supra, a la pág. 521, citando a *García López v. Méndez García*, 88 DPR 363, 380 (1963).

En cuanto al proceso de revisión de las sentencias sumarias, nuestro Alto Foro ha sido enfático en que el Tribunal de Apelaciones debe:

(1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario;

(2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;

(3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y

(4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[10]

Ahora bien, la sentencia sumaria no procederá en las instancias que: (i) existan hechos materiales y esenciales controvertidos; (ii) haya alegaciones afirmativas en la demanda que no han sido refutadas; (iii) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (iv) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335-336 (2021). Además, al revisar la determinación del foro primario, respecto a una sentencia sumaria, estamos limitados de dos (2) maneras. Primero, solo podemos considerar los documentos que se presentaron ante el foro de primera instancia. Es decir, "las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron presentados oportunamente en el foro de primera instancia, ni

---

[10] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118-119 (2015).

pueden, por primera vez ante el foro apelativo, esbozar teorías nuevas o esgrimir asuntos nuevos". *Meléndez González et al. v. M. Cuebas*, supra, a la pág. 114. (Cita depurada). Segundo, solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Íd.*, a la pág. 115. Entiéndase, que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, ya que dicha tarea le corresponde al foro de primera instancia. *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).

**B**

La Ley de Transacciones Comerciales, Ley Núm. 208 de 17 de agosto de 1995, según enmendada, 19 LPRA sec. 401 *et seq*. (Ley Núm. 208-1995), fue creada con el propósito principal de simplificar, clarificar y modernizar el derecho que rige las transacciones comerciales, así como permitir la continua expansión de las prácticas comerciales por medio de las costumbres, los usos y los acuerdos entre las partes. *Crespo Rodríguez v. González González*, supra, pág. 571; *DLJ Mortgage v. SLG Santiago- Ortiz*, 202 DPR 950, 963 (2019); *COSSEC et al. v. González López et al.,* 179 DPR 793, 802 (2010). El referido estatuto define los instrumentos negociables como una promesa o una orden incondicional de pago de una cantidad específica de dinero. 19 LPRA sec. 504(a). Los instrumentos negociables son documentos que se utilizan en el comercio y en la banca, denominados también como títulos o valores, títulos de crédito, efectos de comercio y documentos comerciales. Entre los instrumentos más utilizados se encuentran los pagarés. *COSSEC et al. v.*

*González López et al.,* supra, pág. 799. Dicho estatuto define un *pagaré* como una promesa, es decir, "un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar". 19 LPRA secs. 503 y 504(e). Los pagarés se distinguen entre los que contienen una fecha específica de vencimiento o no, o si son vencederos o pagaderos a la presentación. 19 LPRA secs. 508 y 509.

Por otro lado, la Ley Núm. 208-1995, *supra*, dispone que un tenedor "[r]especto a un instrumento negociable, significa la persona en posesión del mismo si el instrumento es pagadero al portador o, en el caso de un instrumento pagadero a una persona identificada, si la persona identificada está en posesión del mismo". 19 LPRA sec. 451(20). Igualmente, establece que la persona con derecho a exigir el cumplimiento de un instrumento negociable es el tenedor del mismo. 19 LPRA sec. 601. Se prueba ser tenedor de buena fe de un instrumento con la firma y la autenticidad de este. En una causa de acción para exigir el cumplimiento del instrumento, si se admite o se prueba la validez de las firmas, el demandante que lo produzca tiene derecho al pago si prueba ser el tenedor del pagaré. 19 LPRA sec. 608.

Sobre dicho particular, el citado estatuto define el término *endoso* como una firma, que no sea la de un signatario como firmante, librador o aceptante, que por sí sola o acompañada de otras palaras se añade en un instrumento con el propósito de: (1) negociar el instrumento; (2) restringir el pago del instrumento; o (3) incurrir en la responsabilidad del endosante respecto al instrumento, pero independientemente de la intención del signatario, una firma y las palabras que

la acompañen es un endoso, a menos que las palabras que acompañan la firma u otras circunstancias no ambiguas indiquen que la firma fue puesta con un propósito distinto al de un endoso. En ese sentido, para determinar si una firma está añadida en un instrumento, un papel adherido a este se considera parte de él. 19 LPRA sec. 554.

### C

La parte promovente de una acción de cobro de dinero sólo tiene que demostrar la existencia de una deuda válida, que la misma no se ha pagado, que es la persona o entidad acreedora, y que la persona o entidad demandada es su deudora. *General Electric v. Concessionaires, Inc.*, 118 DPR 32, 43 (1986). Asimismo, deberá probar que la deuda que reclama es líquida, vencida y exigible. *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 900 (1993).

Una deuda se considera "líquida" cuando la suma de dinero que se adeuda es "cierta" y "determinada". Ramos y otros v. Colón y otros, supra, citando a M.A. Del Arco Torres y M. Pons González, Diccionario de Derecho Civil, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168; Freeman v. Tribunal Superior, 92 DPR 1, 25 (1965); véase, además, Rivera Rodríguez & Co. v. Lee Stowell, etc., supra. Por otra parte, la deuda es "exigible" cuando está vencida y, por lo tanto, puede demandarse el cumplimiento de la obligación. *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

Una vez probado que existe una obligación de pago, la prueba de extinción de una obligación le corresponde

al que se opone. Véanse, *Cochón v. Correa*, 32 DPR 734 (1924); Art. 1168 del Código Civil, 31 LPRA sec. 3261.

**III**

Mediante el recurso que nos ocupa, la parte apelante impugna la *Sentencia Sumaria* emitida por el foro primario el 10 de marzo de 2026, notificada al día siguiente. En esencia, mediante sus dos (2) señalamientos de error, alega que no procedía dictar sentencia sumaria, al amparo de la Regla 36 de Procedimiento Civil, *supra*, toda vez que existe controversia de hechos respecto a las cuantías adeudadas y la aplicación de pagos realizados a los predecesores del PR CR.

En vista de que, para determinar la comisión de los aludidos errores por parte del tribunal *a quo* era necesario examinar la procedencia de la solicitud de sentencia sumaria incoada por la parte apelada, nos dispusimos a examinar *de novo* este escrito, así como el pliego en oposición. Tras revisar dichos escritos, se desprende que, aunque la parte apelante esencialmente cumplió con los requisitos establecidos en la Regla 36.3 (A) de Procedimiento Civil, esta no hizo referencia a ninguna prueba que estableciera los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial. Ahora bien, de un examen de la oposición de la parte apelante, esta omitió incluir una exposición breve de las alegaciones de las partes, así como una indicación a prueba que estableciera los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, a tenor con la Regla 36.3 (B) de Procedimiento Civil.

Sabido es que las partes no pueden descansar en aseveraciones generales, es decir, meras afirmaciones no bastan. *Flores v. Municipio de Caguas*, supra; *Ramos Pérez v. Univisión*, supra. A esos efectos, y a tenor con la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.5, las partes están obligadas a demostrar que tienen evidencia para sustanciar sus alegaciones. *Flores v. Municipio de Caguas*, supra; *Ramos Pérez v. Univisión*, supra. Por lo tanto, la parte apelante no podía descansar únicamente en alegaciones. Lo anterior, en virtud de la propia Regla 36.3(c) de Procedimiento Civil, *supra*, la cual dispone que:

> Cuando se presente una moción de sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede.

No obstante, lo anterior, el solo hecho de no presentar evidencia que controvierta lo presentado por la parte promovente no implica necesariamente que proceda la sentencia sumaria. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a la pág. 913; *García Rivera et al. v. Enríquez*, supra, a la pág. 338; *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, supra; *Cuadrado Lugo v. Santiago Rodríguez*, supra. La concesión de una solicitud de sentencia sumaria ocurrirá cuando en derecho así proceda. En vista de lo anterior, adelantamos que la parte apelante no logró establecer controversias de hechos materiales suficientes que ameritaran declarar sin lugar el petitorio sumario incoado por PR CR. Por ello, coincidimos con el foro

primario en que no existen hechos en controversia. Veamos.

Según surge del expediente ante nuestra consideración, el 10 de septiembre de 2024, PR CR presentó una *Demanda* contra la parte apelante. En apoyo a las alegaciones presentadas en dicha *Demanda*, PR CR presentó una *Moción al Expediente Judicial* mediante la cual incluyó la prueba documental necesaria para sustentar las alegaciones de la *Demanda*, tales como el contrato de préstamo y los pagarés. Apuntamos que, de los pagarés presentados por la parte apelada, se desprende un *allonge* adherido a los mismos con un endoso a favor de PR CR.[11] Conforme se desprende de estos, el primer endoso fue realizado por el Banco de Desarrollo Económico para Puerto Rico a nombre de Condado 5 LLC. Luego, según surge del *allonge* de los pagarés, Condado 5 LLC realizó un endoso a nombre de PR CR. Por lo que, de esta manera, PR CR probó ser tenedora de buena fe de dichos pagarés.

Por otra parte, la parte apelante, en su oposición, no presentó prueba documental para rebatir la presentada por PR CR. Por lo que, aunque la parte apelante sostiene que existe controversia en lo relativo a las cuantías adeudadas y la aplicación de pagos realizados a los predecesores del PR CR, lo cierto es que la parte apelante no presentó prueba para detallar y evidenciar los pagos realizados. Igualmente, subrayamos que, aunque la evidencia se debe evaluar de forma más favorable a la parte que se opone, es forzoso concluir que la parte apelante no colocó en posición al

---

[11] *Moción al Expediente Judicial,* entrada núm. 2, anejos 2, 3 y 4 en SUMAC.

Tribunal para determinar que aún existían hechos materiales en controversia. Reiteramos que el propósito de la sentencia sumaria es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo. Por tanto, el mecanismo de sentencia sumaria era el adecuado.

Ante el escenario anterior, y después de examinar cuidadosamente *de novo* el trámite procesal, el expediente ante nos, los escritos de las partes, así como la normativa aplicable, concluimos que el Tribunal de Primera Instancia no erró en su determinación y, por consiguiente, los errores señalados por la parte apelante no se cometieron. A tenor, procede confirmar la sentencia apelada.

**IV**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia Sumaria* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones